Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,791-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

HOLLY LEIGH WOOD AND                          Plaintiffs-Appellees
MATTHEW W. WOOD, CO-
EXECUTORS OF THE
SUCCESSION OF JERRY W.
WOOD

versus

JOE M. HACKLER                                Defendant-Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 599387

Honorable Ramon Lafitte, Judge

* * * * *

OFFICES OF J. RANSDELL KEENE          Counsel for Appellant
By:    Joseph Ransdell Keene

MAYER, SMITH & ROBERTS, L.L.P.        Counsel for Third Party
By:    Deborah Shea Baukman           Appellees, John Lorick,
                                      Snyder Properties
                                      Louisiana, L.L.C. and
                                      Remax Real Estate
                                      Services

THE PESNELL LAW FIRM, APLC            Counsel for Appellees,
By:    Billy Ray Pesnell              Holly Leigh Wood and
       John Whitney Pesnell           Matthew W. Wood, Co-
                                      Executors of the
                                      Succession of Jerry W.
                                      Wood

* * * * *

Before STONE, STEPHENS, and McCALLUM, JJ.

**McCALLUM, J.**

"For who has despised the day of small things?"[1] Undeniably, this litigation involves matters of great significance to all parties involved and a large monetary judgment has already been rendered. However, even cases of great consequence are composed of various, smaller, but critical constituent parts. Importance is not always directly proportional to magnitude. The matter before this Court hinges, in no small part, on the significance of the admissibility and weight accorded information gleaned from the Internet and the lack of information in the appearance clause of a contract. These and other such diminutive issues coalesce to assist our resolution of the larger issue before this Court: Whether long-arm service of process was perfected prior to entry of a preliminary default and its subsequent confirmation.

Holly Leigh Wood and Matthew W. Wood, co-executors of the succession of Jerry W. Wood, allege that they sent, by certified mail, the citation and petition to Joe M. Hackler, the defendant, at his correct address. They argue that an "unclaimed" return is not sufficient to defeat proper service and that they complied with all statutory obligations.

Joe M. Hackler argues that the returned certified mail, stamped "unclaimed," proves that he did not receive the citation and petition. He contends that the trial court erred in granting the default judgment and further asserts that the trial court subsequently erred by denying his motion to annul the default. For the following reasons, we reverse the trial court's judgment.

---

[1] Zechariah 4:10 (New American Standard Bible).

**FACTS**

On August 25, 2016, Joe M. Hackler (Mr. Hackler) entered into a buy/sell agreement for immovable property with the Succession of Jerry W. Wood, through its co-executors, Holly Leigh Wood and Matthew W. Wood (the Woods). Of particular note in the agreement, Mr. Hackler's address was not listed under the appearance section of the contract. Thereafter, on March 16, 2017, the Woods filed their petition, titled "Petition to Recover Damages for Breach of Contract of Sale," against Mr. Hackler, seeking $100,000.00 plus interest and fees.

Although the agreement in question did not provide Mr. Hackler's address, all parties agree that it was known that Mr. Hackler resided somewhere in the state of Texas. The Woods were unable to rely on any address contained within the contract, nor was there any language requiring Mr. Hackler to keep them so apprised.[2] In order to obtain an address to attempt long-arm service on Mr. Hackler, under Louisiana Revised Statute 13:3201, the Woods turned for assistance to the ubiquitous Internet and utilized a website with the following address: https://nuwber.com.[3] At this location, counsel found an ostensible address for Mr. Hackler: 1003 Gardenia Street, Longview, Texas 75601 ("the Gardenia address"). The attorneys for the Woods obtained a citation from the Caddo Clerk of Court and subsequently sent, by certified mail on March 20, 2017, the citation and petition to Mr. Hackler at the Gardenia address.

---

[2] This prompts the recognition that appearance clauses are not merely perfunctory.

[3] We note that no evidence was submitted as to the credibility, verity, or sufficiency of https://nuwber.com, nor its claims of informational prowess.

The certified mail was returned, to counsel for the Woods, as unclaimed. The United States Postal Service ("USPS") stamped the front side "unclaimed" and included handwritten remarks of "3/28," "FWD," "4-5" and "4-14." On the back side of the returned mail, the USPS included two yellow stickers. The first sticker was dated "03/23/17" and states, "Notify Sender of New Address, Hackler, 4 Pegues PL, Longview, TX 75601-4661" ("the Pegues PL address"). The second sticker, dated "04/17/17," states, "Return to Sender, Unable to Forward, Unable to Forward, Return to Sender."[4]

On April 24, 2017, by affidavits of proof of service, signed by Debra Ervin, J. Whitney Pesnell and Bill R. Pesnell, as employees or partners of the Pesnell Law Firm, the Woods submitted their alleged proof of long-arm service. Debra Ervin's affidavit attested that she sent, by certified mail, the citation and petition to Mr. Hackler at the Gardenia address. She subsequently received back the returned mailing, stamped "unclaimed," with a notification of the new Pegues PL address from the USPS. J. Whitney Pesnell's affidavit attested that he deposited the certified mail at the local post box. Billy R. Pesnell attested that he supervised and directed the mailing. On May 31, 2017, the Woods obtained a preliminary default.

Thereafter, on July 26, 2017, the Woods filed an amended affidavit of proof of service by Debra Ervin. In addition to her previous affidavit, Debra Ervin attested that she acquired the Gardenia address through https://nuwber.com. On September 11, 2017, the Woods obtained a second preliminary default. The Woods confirmed the default on October 16, 2017.

---

[4] We note that no other letters, notifications or evidence was submitted with regard to the actions or procedures taken by the USPS with regard to this certified mail. We also note that the record does not indicate that the Woods ever attempted to verify, with the USPS, the accuracy of the address received from the website.

On October 19, 2017, the judge signed a final judgment in favor of the Woods in the amount of $114,282.60.

On November 17, 2017, Mr. Hackler filed a motion to annul default judgment for lack of proof of service. On June 26, 2018, Mr. Hackler filed a first amended motion to annul default judgment for lack of proof of service and insufficiency of affidavit for default. The trial court held a hearing on July 2, 2018. Mr. Hackler argued that he did not receive the certified mail and because no signed green card was attached to the affidavit of service, then the trial court must annul the default judgment. The Woods argued that they only needed to prove that they sent the certified mail to Mr. Hackler and that returned mail, stamped "unclaimed," does not defeat long-arm service. The Court denied Mr. Hackler's motion.

Thereafter, Mr. Hackler filed a devolutive appeal, delivering the matter to us, for our consideration.

**DISCUSSION**

Mr. Hackler argues that because the mail was unclaimed, and he did not receive the mail, then the Woods failed to properly serve him via long-arm statute. Accordingly, he proposes that without proper service, the trial court erred in confirming the default. He further contends that Louisiana's long-arm statute requires that the affidavit of service, filed prior to any preliminary default, must have a signed return card attached.

The Woods argue that Mr. Hackler was served. They challenge Mr. Hackler's argument that he had to actually claim or directly accept the mail. The Woods, instead, argue that Mr. Hackler had knowledge or notice that the certified mail was in his mailbox, at either address, and he was therefore properly served under the Louisiana long-arm statute. In fact, the Woods

4

allege that Mr. Hackler specifically sought to defeat service by not claiming the certified mail even though he had notice that the certified mail was forwarded to his new address.

"A citation and service thereof are essential in all civil actions … Without them all proceedings are absolutely null." La. C.C.P. Art. 1201.

Louisiana Code of Civil Procedure Article 6 states the following:

A. Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding.

…

B. In addition to the provisions of Paragraph A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and with the Constitution of the United States.

Louisiana Revised Statute 13:3201 allows a court to exercise personal jurisdiction over a nonresident in an action such as the one before us. See La. R.S. 13:3201. Additionally, Louisiana Revised Statute 13:3204 states the following:

In a suit under R.S. 13:3201, a certified copy of the citation … and of the petition … shall be sent by counsel for the plaintiff … to the defendant by registered or certified mail, or actually delivered to the defendant by commercial courier, when the person to be served is located outside of this state …

"Just as personal jurisdiction over residents cannot be maintained without valid personal or domiciliary service as required by law, personal jurisdiction over non-residents is fully dependent upon strict compliance with the long-arm statute's procedural requirements." *Clay v. Clay*, 389 So. 2d 31, at 37 (1979). "Therefore, personal jurisdiction over a non-resident obtained by use of the long arm statute may not attach if the service of process falls short of R.S. 13:3204's requirements." *Id.* "Service of process

5

so made has the same legal force and validity as personal service on the defendant in this state." LSA R.S. 13:3204(C).

Logically, a necessary requirement for proper long-arm service is that the petitioner sends the certified citation and petition to the actual, correct address of the defendant. *See Folse v. St. Rose Farms, Inc.*, 14-436 (La. App. 5 Cir. 11/25/14), 165 So. 3d 2014; *see also Dukov v. 701 Corp.*, 95-1310 (La. App. 4 Cir. 1/19/96), 668 So. 2d 379. When completed properly, the petitioner, as discussed infra, need not prove that the defendant actually claims the certified mail.

"Under the clear wording of § 3204, all that is necessary to constitute service upon a non-resident under the long-arm statute is that counsel for the plaintiff send a certified copy of the citation and petition in the suit to the defendant by registered or certified mail, or actually deliver it in person. There is no requirement under § 3204 for a signed return receipt." *McFarland v. Dippel*, 1999-0584 (La. App. 1 Cir. 3/31/2000), 756 So. 2d 618, at 622; *writ denied,* 2000-1794 (La. 9/29/00), 7770 So. 2d 349.

"To allow a defendant to defeat service of process by refusing to claim a certified letter at the post office would make a mockery of R.S. 13:3204 and render it completely ineffective." *McFarland,* 756 So. 2d at 622; *see Thomas Organ Co. v. Universal Music Co.*, 261 So. 2d 323, at 327 (La. App. 1 Cir. 1972). When the facts demonstrate that a litigant ignores notice, such conduct is tantamount to a refusal of service and cannot defeat otherwise valid service. *See Id.*

We take note of the manifest error standard of review that applies to this case. The issue to be resolved by us is not whether the trier of fact's decision was right or wrong, but whether that decision was reasonable.

6

*McFarland*, 756 So. 2d at 622; *Stobart v. State, Dept, of Trans. & Dev.*, 617 So. 2d 880, 882 (La. 1993). We also note that *McFarland* reached a contrary result to the one we now render.

The *McFarland* case, however, is distinguishable from this case and does not enjoin us to a like result. The record in that case was replete with evidence, including testimony of the defendant himself and a postal worker. The testimony and evidence showed that the defendant had knowledge of the pending or future litigation against him, specifically, the exact suit to which he sought to refuse service. It was further undisputed that the certified mail was sent to the actual and correct address of that defendant. Testimony by a postal employee proved that the defendant's correct address received the certified mailing. Therefore, the appellate court held that the trial court did not err in finding proper service when the defendant received notice and he refused to accept such notice.

We must now determine if the trial court committed manifest error in finding that Mr. Hackler received, and therefore had notice, of the citation and petition. If such were a reasonable finding based on the evidence in the record, then Mr. Hackler's conduct would be tantamount to a refusal of service and the Woods would be found to have complied with the requirements for long-arm service. One key element is whether the Woods sent the certified mail to the actual, correct address of Mr. Hackler. From the record, we find no evidence that supports such a finding. Furthermore, the Woods failed to send the citation and petition to the only address in the record proved to belong to Mr. Hackler, the Pegues PL address.

As noted earlier, the Woods failed to submit into the record any evidence as to the credibility, verity or sufficiency of the Internet site they

7

used to find Mr. Hackler's alleged address. Just as a document or report from a private investigator is not self-authenticated, the same is true for the Internet. Stated perspicuously, the Internet is not self-proving. Without a proper evidentiary foundation or any evidence as to the credibility or accuracy of the information found at https://nuwber.com, we cannot conclude that the address provided by that site and subsequently used for mailing by the Woods was the correct address for Mr. Hackler.

If anything, the evidence in the record can be construed to prove that the Gardenia address was not correct. It is uncertain from which address Mr. Hackler moved, but it is clear that he changed his address to the Pegues PL address. The only address at which Mr. Hackler has been proved to reside, or even be connected with, is the Pegues PL address. Given the evidence, any other finding would be manifestly erroneous.

Additionally, the USPS notified the Woods of the new address. The Woods, by strategic calculation, decided not to mail the citation and petition to the address provided by the USPS. Moreover, the Woods cannot prove that the Pegues PL address received the certified mailing. The USPS notified the Woods that although it tried to forward the mail on at least two occasions, it was "unable to forward." It then notified counsel, by return mail, that it had failed to forward the mail to the new address. It further notified the Woods of the new Pegues PL address. Even with such notice, counsel for the Woods chose not to resend the citation, and instead moved forward with the preliminary default and confirmation thereof. The Woods failed to make any showing that they sent the citation and petition to the correct address for Mr. Hackler. Thus, the Woods have failed to prove that they complied with the requirements of La. R.S. 13:3201.

## CONCLUSION

The judgment of the trial court is REVERSED. All costs of this appeal are assigned to the appellees.